## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 28 2020, 10:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Flora
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

GUARDIAN AD LITEM PRO SE

Stephen P. Griebel
Griebel Law Office LLC
Churubusco, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: the Involuntary Termination of the Parent-Child Relationship of: Jo.G., Ja.G., and D.G. (Minor Children),

C.G. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

July 28, 2020

Court of Appeals Case No. 20A-JT-372

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause Nos.
02D08-1904-JT-252
02D08-1904-JT-253
02D08-1904-JT-254

*Appellee-Petitioner,*

and

Stephen P. Griebel,

*Guardian ad Litem*

**Baker, Judge.**

[1] C.G. (Father) appeals the trial court's order terminating his parent-child relationship with Jo.G., Ja.G., and D.G. (the Children). Father argues that there is insufficient evidence supporting the trial court's conclusion that there is a reasonable probability that the conditions resulting in the Children's removal will not be remedied. Finding the evidence sufficient, we affirm.

## Facts

[2] In March 2018, the Children and their mother were living in a home that had significant clutter, moldy dishes in the sink, no hot water, and black mold throughout the house. The home was condemned on March 16, 2018. At that time, Father was living with relatives. The Department of Child Services (DCS) began investigating allegations of neglect. On April 9, 2018, the Children were placed in relative care and DCS filed a petition alleging that the Children were children in need of services (CHINS). Shortly thereafter, the

Children were placed in foster care and have remained in foster care since that time.

[3] During DCS's investigation, Father tested positive for methamphetamine. DCS also learned that Father has a prior criminal history, including convictions for child molesting, burglary, failure to register as a sex offender, possession of paraphernalia, and non-support of a dependent child.[1]

[4] On May 3, 2018, Father admitted that the Children were CHINS and the trial court adjudicated them as such. As part of the dispositional decree, Father was ordered to refrain from all criminal activity, maintain safe and appropriate housing, attend all case conferences and visitations, submit to a diagnostic assessment and a drug and alcohol assessment, and participate with random drug screens and home-based services.

[5] Over the course of the CHINS case, Father was incarcerated periodically. Specifically, he was incarcerated in Noble County from June 7 to August 6, 2018, for a contempt charge for failing to appear at a hearing; in DeKalb County from September 1 to September 27 and from October 18 to December 21, 2018, for possession of methamphetamine, unlawful possession of a firearm by a violent felon, and driving while suspended; and again in DeKalb County on March 3, 2019, for failing to appear at the sentencing hearing. On March

---

[1] The nonsupport of a dependent child conviction did not involve the Children. Father has three other children who he was not supporting financially.

27, 2019, he was sentenced to four years for possession of methamphetamine and one and one-half years for nonsupport of a dependent. His earliest possible release date is August 29, 2022.

[6] During the CHINS case, Father tested positive for methamphetamine five times and refused a sixth screen because he knew he would test positive. When not incarcerated, he completed the diagnostic assessment but did not comply with its recommendations or complete any other court-ordered services. He attended some, but not all, of the child and family team meetings; he attended some, but not all, of the visitations with the Children. He did not have stable employment or housing at any point.

[7] On April 24, 2019, DCS filed a petition to terminate the relationship between Father and the Children. The trial court held a termination hearing on October 15 and October 21, 2019. Father testified at the termination hearing that his incarceration "could be changed" because he might receive a "time cut" and would then seek a sentence modification. Tr. Vol. II p. 138-39. Father testified that he had completed multiple programs during his incarceration but refused to sign a release so that DCS could verify his assertions. He was "hopeful" that his mother would allow him to stay with her after his release, but did not have a concrete plan in place. *Id.* at 146. On January 16, 2020, the trial court terminated the parent-child relationship between Father and the Children. Father now appeals.

# Discussion and Decision

[8] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005) (internal quotations omitted).

[9] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

    (A)    that one (1) of the following is true:

        (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)     The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)     The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

[10] Father's sole argument on appeal is that the trial court erred by finding that DCS proved by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the Children's removal and continued placement outside his care and custody will not be remedied.

[11] The Children were originally placed outside the home because the home in which they had been living had been condemned and was full of mold and clutter. Additionally, Father tested positive for methamphetamine and did not have stable housing or employment. The Children continued to be placed outside of his care and custody because he continued to test positive for methamphetamine, participated in virtually no court-ordered services, and was repeatedly incarcerated for varying lengths of time.

[12] He is currently incarcerated on a drug-related charge. His earliest possible release date is in August 2022, and while he hopes for a cut in time and a sentence modification, we cannot rely on hope when the well-being of children is at stake. He claims to have participated in multiple programs while incarcerated but has refused to sign a release so that DCS can verify his claim. Tr. Vol. II p. 33 (Father testifying at the termination hearing that he would "[p]ossibly" agree to sign the release). He does not have a plan for stable and appropriate housing for himself, much less for the Children, upon his release.

Likewise, at no point during these proceedings has he held stable employment, had stable housing, or provided clean screens when not incarcerated.

[13] Essentially, there is no credible evidence that Father has made progress on any of the issues that have been impediments to placing the Children with him. Under these circumstances, we find that the trial court did not err by concluding that DCS had proved by clear and convincing evidence that there is a reasonable probability that the conditions resulting in the original and continued removal of the Children from Father's care and custody will not be remedied.

[14] The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.